UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SUSIE A. BISHOP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:10-cv-890-WTL-DKL |
| | ) | |
| TOWN OF FISHERS, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

This cause is before the Court on Defendant Town of Fishers' Motion for Summary
Judgment (dkt. no. 28). The motion is fully briefed, and the Court, being duly advised,
**GRANTS** the motion for the reasons set forth below. In addition, the Court **DENIES** the
Defendant's Motion to Strike the Plaintiff's Statement of Material Facts (dkt. no. 39).

## I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if
the movant shows that there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the
admissible evidence presented by the non-moving party must be believed and all reasonable
inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476
F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view
the record in the light most favorable to the nonmoving party and draw all reasonable inferences
in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue
may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations,

that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. <u>FACTUAL BACKGROUND</u>

Defendant Town of Fishers ("Fishers") hired Plaintiff Susie A. Bishop in July 2000 as a clerk/receptionist for the town's Department of Development. While Bishop was working in this position, Building Commissioner Dan Jacobs offered Bishop the opportunity to perform property inspections, and Bishop accepted. She performed residential and some commercial inspections in addition to her clerical duties.

In 2005 Fishers was experiencing a construction boom. During that time, Jacobs approached Bishop and asked her if she was interested in a position as a Building Inspector, Level II. When Jacobs offered Bishop the position, she stated "I can't be an inspector," because "there is [sic] not a lot of women in that field, and there were no women in Fishers in that field," but Jacobs assured her that this would not be an issue. Fishers then created this position for Bishop and ultimately gave it to her.

As an Inspector II, Bishop was required to obtain one residential inspector certification, and Bishop obtained that certification in 2007 after Jacobs told her of the requirement. She then went on to obtain ten additional certifications, even though she was required to obtain only one certification to hold her position. While Fishers paid for Bishop to obtain more certifications than the one certification she needed for the position of Inspector II, Bishop paid for many of her

2

certifications out of her own pocket. As a result of her certifications, Fishers paid Bishop an additional $1,000 every year as part of her compensation.

Bishop was not treated warmly during her employment with Fishers. Assistant Building Commissioner Mark Fasel once told her that if she "wasn't fucking the building commissioner, [she] wouldn't be in the fucking job [she] was in."[1] When Fasel and Bishop were alone watching concrete basement slabs being assembled, Fasel made a joke about female inspectors that disappeared after basements had been poured. Bishop also heard Fasel and Tony Holland, a coworker, agree that they "didn't care what anyone said or what certifications [she] got, [Bishop] would never be allowed in commercial." Holland also joked, asking "what's better than a fully certified female? A man with a good ol' boy certification."

Bishop also testified that there were daily reports about "blow jobs" and sexually explicit jokes. Bishop's coworkers would follow her to her cubicle, which was located in the back corner of the office, and expel gas. Bishop complained to Jacobs, who then moved her cubicle to another location with better air circulation.

Jacobs himself told Bishop that she was hurting her income by continuing to obtain certifications and that her job was in jeopardy by continuing to obtain certifications. After Bishop began to receive her commercial certifications, Jacobs told her there was no way he would put a woman in a commercial position. Although Bishop had conducted some commercial inspections during her term as clerk/receptionist, as an inspector Bishop was not permitted to conduct commercial inspections despite achieving her commercial certifications. When Jacobs told Fasel to take Bishop on commercial inspections, he refused, and nothing more was done.

---

[1] Bishop was not having sexual relations with Jacobs.

On July 17, 2009, Jacobs congratulated Bishop on nine years of service, and then stated "Nine years doesn't mean anything. You need ten years."[2] Bishop believes that Jacobs was referring to qualifying for a pension.

During her work with the department, Bishop received disciplinary action on four occasions. In January 2008, Bishop was receiving a performance review from a fellow employee who was filling in for Bishop's supervisor. As her reviewer praised Bishop's work, Bishop said that it was "bullshit," because she was getting high marks for things she claimed had not taken place. Shortly thereafter, Bishop received a verbal warning for using profanity during her performance review.

In May 2008, Bishop received a written warning, again for using profanity. One of Bishop's coworkers, Steve Rector, had picked up and read one of Bishop's reports from the office printer. Rector said "this is bullshit," when he looked at Bishop's report, and Bishop responded, saying "it's none of your business." Jacobs later issued Bishop a written warning that charged her with saying "it's none of your fucking business," in response to Rector's comment. Bishop told Jacobs that she had not used profanity during the exchange, but Rector had done so. She asked why Rector was not given a verbal warning for his language, but the only reply she received was that "it was different."

---

[2] Although Bishop repeatedly faults the Defendants for distorting her testimony, Bishop's counsel distorts her testimony in his brief as well. Bishop testified that Jacobs' "exact words" were "Nine years doesn't mean anything. You need ten years," but counsel repeatedly quotes his statement as "this means nothing, because you need ten years for a pension." Counsel also cites Jacobs' response to Bishop's query about disciplining other employees for using profanity as "she" was different, when Bishop consistently testified that Jacobs said that "it" was different. In a case alleging gender discrimination purportedly supported by direct evidence, accurate representation of deposition testimony is critical.

In March 2009, Bishop was suspended for not wearing a hard hat during a residential dig. As Bishop approached the job site, Fasel asked her whether she had a hard hat. When she responded that she did, he asked her to retrieve it, and she did. Even though it was not required that she wear a hard hat at residential inspections, Bishop wore the hard hat at all times while she was at the dig. However, at one point her supervisor Bob Parsons called her on her cell phone, so she stepped away from the site, removed her hard hat, and took the call. When she returned to the site after the phone call, she again wore her hard hat. Jacobs later called Bishop into his office and issued her a three-day suspension for not wearing a hard hat. Even though Bishop tried to explain to Jacobs that she had worn her hard hat, Jacobs issued the suspension, stating that if she knew what was good for her, she would sleep in a hard hat. Because the hard hat issued to Bishop by Fishers was damaged and caused her discomfort, Bishop purchased her own certified pink hard hat and wore it into the office the next day.

In August 2009, Bishop was suspended after a driving training course held on an airport tarmac. As Bishop exited the airport, she drove onto an active airport runway and an airport official in a golf cart redirected her to the appropriate exit. Following the training incident, the Fishers Police Department recommended in a memorandum to Jacobs that Bishop no longer be permitted to drive a town-owned vehicle. Specifically, Sergeant Kevin Trotter wrote:

> Per your request, this memo has been drafted to inform you that Susie Bishop should no longer be permitted to drive a town owned vehicle. Susie was unable to follow extremely simple directions during the driving exercises. The practical skills that were administered today were very low speed and focused on the basics of driver capabilities. Susie was unable to complete the required skills to a satisfactory level. In each of the three required exercises Susie demonstrated an inability to complete simple driving tasks.
>
> Susie also demonstrated a lack of common sense in her decision making. While exiting the training area, which was located on the airport tarmac, Susie drove her

5

vehicle onto the airport's active runway. The runway was located in the exact opposite direction from the entrance/exit that we used to gain access to the airport property and she disregarded signs that were posted that prohibited vehicles from driving onto that area of the airport.

It is the opinion of the Police Department Driving Instructors, who were present, that Susie not be permitted to drive a town owned vehicle. Based upon her performance during this training event, it is our opinion that her driving would be a liability to the Town of Fishers.

Being able to safely operate a town vehicle was a requirement of Bishop's employment.

Following the August 2009 suspension, Bishop's employment was terminated due to "past write-ups."

### III. <u>DISCUSSION</u>

Bishop asserts that Fishers' failure to make her a commercial inspector and her termination were because of her gender and therefore violate Title VII. Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII disparate treatment claim, a plaintiff must establish that she is the victim of intentional discrimination, *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 611 (7th Cir. 2001), which may be proved directly or indirectly.[3] Bishop argues that her claims survive under either approach.

*1. Direct Method*

---

[3] As discussed below, the Court considers only the arguments set forth in Bishop's brief and does not consider arguments contained in her Statement of Material facts. S.D.Ind.L.R. 56.1 advisory committee's note to subdivision (a).

"To avoid summary judgment under the direct approach, the plaintiff must produce sufficient evidence, either direct or circumstantial, to create a triable question of intentional discrimination in the employer's decision." *Silverman v. Board of Educ. Of City of Chicago*, 637 F.3d 729, 733 (7th Cir. 2011). A plaintiff proceeds under the direct method by proving the practice by either direct evidence or circumstantial evidence.[4]

Bishop argues that several statements by her supervisors provide sufficient direct evidence to support her claims. Direct evidence proves the decisionmaker's discriminatory intent without reliance on inference or presumption. *Id.* at 734. It amounts to an acknowledgment of discriminatory intent by the decisionmaker. *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (explaining that employers are unlikely to be caught making statements that directly evidence discrimination, such as "I fired Judy because she was an old woman"). However, "[w]hen a plaintiff proceeds under the direct proof method, allegedly discriminatory statements are relevant . . . only if they are both made by a decisionmaker and related to the employment decision at issue." *Stopka v. Alliance of American Insurers*, 141 F.3d 681, 688 (7th Cir. 1998).

Bishop argues that four statements directly prove gender discrimination.[5] First, when Jacobs congratulated Bishop on nine years of service, he told her that "Nine years doesn't mean

---

[4] Under the direct method, a plaintiff may create a "'convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011). Bishop does not argue that Fishers' actions create such a mosaic.

[5] Neither party clarifies to the Court who the relevant decisionmaker is. Reading the record in the light most favorable to Bishop, the Court considers Dan Jacobs and Mark Fasel the relevant decisionmakers.

anything. You need ten years." There is no gender discrimination evident on the face of this statement. In fact, the statement suggests only that Jacobs was motivated to terminate Bishop's employment because he did not want to commit the Town to paying her a pension. As such, this statement is not related to Bishop's gender and therefore can not be direct evidence of gender discrimination.

Second, after Bishop achieved her first commercial certification, Bishop heard Fasel and Holland agree that she would not be allowed in a commercial position; specifically they said that they did not care what anyone said or what certifications Bishop received, she would never be allowed "in commercial." While this statement certainly indicates that Fasel was predisposed against Bishop's promotion, it does not directly implicate her gender as the reason. Bishop interprets the statement as indicating Fasel's bias against her because she was female, but even she admits that this could be "all [her] imagination running wild." Fasel's statement is just as consistent with a desire to prevent her from conducting commercial inspections because he did not like her personality, a desire that does not run afoul of Title VII. Without the benefit of inference, this statement does not directly indicate gender discrimination.

Third, Jacobs told Bishop that she was hurting her income by obtaining certifications and that her job was in jeopardy because she continued to obtain additional certifications. The meaning of these statements is unclear and Bishop does not try to explain them. Regardless, these statements link Bishop's employment status with her certifications, not her gender.

Fourth, Jacobs also told Bishop that there was no way he would put a woman in a commercial position. This statement indicates a gender-biased motive without need of inference.

Yet this statement can only be fairly characterized as relating to the decision to promote Bishop;[6] it does not suggest anything about termination and cannot be considered direct evidence for that purpose. Accordingly, Bishop has not set forth any direct evidence that supports her discriminatory termination claim.

Finally, with regard to Jacobs' statement that he would not put a woman in a commercial position, "[t]o be probative of discrimination, isolated comments must be contemporaneous with the [the adverse action] or causally related to the [applicable] decision making process." *Geier v. Medtronic Inc.*, 99 F.3d 238, 242 (7th Cir. 1996). Bishop has not made the requisite temporal or causal showing in this case. She explains that male coworker Tony Holland was doing commercial inspections at the time of this statement, but she does not show that he was selected for a promotion or position instead of her; in fact, Bishop explained in her deposition that Holland had been doing commercial inspections "for years." Bishop does not point to any employment decision that was made at or near the time of the statement with respect to her or any of her colleagues; as a result, this statement can not be considered direct evidence of discriminatory failure to promote. Bishop has thus failed to present any direct evidence with regard to her failure to promote claim.

_____

[6] Actually, it is unclear from the record whether an inspector was promoted before conducting commercial inspections or whether an inspector simply began to receive commercial inspection assignments after acquiring the requisite experience or certification. For example, counsel repeatedly use the verb "promote" to describe the action, but Bishop testified that "Charlie Granger, residential inspector, was allowed to make commercial inspections," and she herself conducted some commercial inspections as a clerk/receptionist. In this respect, Bishop's claim regarding commercial inspections could perhaps have been framed as a more general claim of discrimination in the terms and conditions of her employment rather than a failure to promote claim. However, Bishop discusses the issue as a failure to promote claim, so the Court does as well.

2. *Indirect Method*

Bishop argues in the alternative that her claim survives under the indirect method. In order for a claim for failure to promote "[t]o move past summary judgment . . . , a plaintiff must first establish a prima facie case by showing that he is a member of a protected class, he applied for and was qualified for an open position, he was rejected for the position, and the position was filled with a person not in the protected class who had similar or lesser qualifications than the plaintiff." *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010).

Even taking as true the assertions of fact scattered throughout Bishop's brief and statement of material facts, Bishop fails to set forth a prima facie case for failure to promote under the indirect method. The only open position for commercial inspector she references was first advertised after her employment was terminated. Assuming for the sake of this inquiry, as Bishop argues, that Fishers waited until after her termination to advertise the new position, Bishop does not even attempt to show that she was qualified for that position, or that the position was filled by a person not in the protected class who had similar or lesser qualifications. For these reasons, Bishop's claim for discriminatory failure to promote under the indirect method fails.

Similarly, to avoid summary judgment on claims for discriminatory termination under the indirect approach, the plaintiff must offer evidence of a prima facie case that (1) she belongs to a protected class; (2) her performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) a similarly situated employee not in her protected class received more favorable treatment. *Brummett v. Sinclair Broadcasting Group Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Once the plaintiff has established her prima facie case, the burden shifts to

10

the employer to present a legitimate and non-discriminatory reason for the employment action. *Id.* Upon such a showing, the burden then shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination. *Id.*

Bishop devotes nearly half of her brief to arguing against the inference of insufficient performance raised by the discipline she received. She asserts that the discipline she received was fabricated to facilitate her termination and therefore the Court can conclude that her performance met Fisher's employment expectations. But this is only one part of the inquiry, and the Court need not reach it because Bishop clearly fails to produce any evidence that she was treated less favorably than any similarly situated male employee.[7] Therefore Bishop has failed to establish a prima facie case for discriminatory discharge and her claim under the indirect method fails.[8]

## IV. <u>MOTION TO STRIKE</u>

The Defendant moves to strike the entirety of Bishop's Statement of Material Facts pursuant to Rule 56.1(b) because it lacks appropriate citations to admissible evidence and contains argument rather than statements of fact.[9] S.D.Ind.L.R. 56.1(b). The preferred course of

---

[7] Bishop provides only the conclusory statement that "similarly situated male inspectors have not been suspended and/or terminated by Defendant," but she provides no support from her deposition or other evidence. This level of generality will not suffice at the summary judgment stage.

[8] Bishop also argues that this fabricated discipline shows that the reason for her termination is pretextual, as it could not be based on falsified discipline. Yet whether the discipline serves as a pretext for discriminatory termination is an inquiry antecedent to the plaintiff establishing a prima facie case, a hurdle Bishop has not cleared.

[9] The rule requires the movant's and the non-movant's statements of material facts to be included as a section in their respective briefs. These facts must be supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence either already in the record or contained in an appendix to the brief. S.D.Ind.L.R. 56.1(a)-(b). The

action would have been for the Defendant to address these deficiencies in its reply brief rather than filing a separate motion to strike. S.D.Ind.L.R. 56.1(f). The Defendant's Motion to Strike the Plaintiff's Statement of Facts in its entirety is denied; however, the Defendant's point is well taken and the Court has not considered any argument or unsupported allegation contained in Bishop's statement.

## V. <u>CONCLUSION</u>

The facts as alleged by Bishop certainly establish that her working environment was unpleasant. However, Bishop has failed to present evidence from which a reasonable jury could determine that Fishers terminated her employment or failed to promote her because of her gender. For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED**. The Defendant's Motion to Strike is **DENIED**.

SO ORDERED:  10/31/2011

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

statement is to state facts, not the party's argument, which should be in the argument portion of the brief. S.D.Ind.L.R. 56.1 advisory committee's note to subdivision (a).